Slip Op. 20-39

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **JIANGSU ZHONGJI LAMINATION MATERIALS CO., LTD., SHANTOU WANSHUN PACKAGE MATERIAL STOCK CO., LTD., JIANGSU HUAFENG ALUMINUM INDUSTRY CO., LTD., and JIANGSU ZHONGJI LAMINATION MATERIALS CO., (HK) LTD.,** | **Before: Jane A. Restani, Judge** |
| Plaintiffs, | |
| v. | **Court No. 18-00089** |
| **UNITED STATES,** | |
| Defendant, | |
| and | |
| **ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS, JW ALUMINUM COMPANY, NOVELIS CORPORATION, and REYNOLDS CONSUMER PRODUCTS LLC,** | |
| Defendant-Intervenors. | |

## OPINION

[Commerce's Final Results of Redetermination Pursuant to Court Order are sustained. Judgment entered.]

Dated: March 24, 2020

Jeffrey S. Grimson, Bryan P. Cenko, James C. Beaty, Jill A. Cramer, Kristin H. Mowry, and Sarah M. Wyss, Mowry & Grimson, PLLC, of Washington, D.C., for Plaintiffs Jiangsu Zhongji Lamination Materials Co., Ltd., Shanton Wanshun Package Material Stock Co., Ltd., Jiangsu Huafeng Aluminum Industry Co., Ltd., and Jiangsu Zhongji Lamination Materials Co., (HK) Ltd.

Aimee Lee, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., for the defendant. Of counsel was Paul K. Keith, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department

of Commerce, of Washington, D.C.

John M. Herrmann, II, Grace W. Kim, Joshua R. Morey, Kathleen W. Cannon, and Paul C. Rosenthal, Kelley Drye & Warren, LLP, of Washington, D.C., for Defendant-Intervenors Aluminum Association Trade Enforcement Working Group and its Individual Members, JW Aluminum Company, Novelis Corporation, and Reynolds Consumer Products LLC.

Restani, Judge:  This matter is before the court following a remand to the Department of Commerce ("Commerce") in Jiangsu Zhongji Lamination Materials Co., Ltd. v. United States, 405 F. Supp. 3d 1317 (CIT 2019) ("Jiangsu"), with which familiarity is presumed.  In Jiangsu, the court upheld Commerce's determination that Plaintiff Jiangsu Zhongji Lamination Materials Co., Ltd. ("Zhongji") and its affiliated companies, Plaintiffs Shantou Wanshun Package Material Stock Co., Ltd. ("Shantou Wanshun"), Jiangsu Huafeng Aluminum Industry Co., Ltd. ("Jiangsu Huafeng"), and Jiangsu Zhongji Lamination Materials Co., (HK) Ltd. ("Zhongji HK") received a countervailable electricity subsidy as supported by substantial evidence; concluded that Commerce's selection and calculation of the electricity benchmark was consistent with its regulations and in accordance with law; and that substantial evidence supported Commerce's (1) application of an adverse inference based upon facts otherwise available ("AFA") to find that the Government of China's ("GOC") electricity program is specific, (2) decision to calculate an ocean freight benchmark based solely on actual price quotes sourced from Maersk,  (3) application of AFA to countervail Zhongji's self-reported "other subsidies," and (4) determination that Zhongji received a countervailable subsidy pursuant to certain of its reported policy loans from state owned commercial banks ("SOCBs").  See Jiangsu, 405 F. Supp. 3d at 1334–45.  The court remanded to Commerce for further explanation of its determinations that Zhongji is not entitled to an Entered Value Adjustment ("EVA") and that Zhongji did not establish non-use of the Export-Import Bank of China's ("Ex-Im Bank") Export Buyer's Credit Program ("EBCP").  See id. at 1345.

### a. Entered Value Adjustment

In Jiangsu, the court concluded that Commerce's denial of Zhongji's request for an EVA was unsupported by substantial evidence. Id. at 1331. The court held that although Commerce preliminarily determined that Zhongji's sales to the United States met each of Commerce's six criteria to qualify for an EVA, it failed to explain adequately its final determination that Zhongji failed to satisfy one criterion; specifically, that Zhongji HK did not ship the subject merchandise directly to the United States. Id. at 1327–28 (citing Ball Bearings and Parts Thereof from Thailand: Final Results of Countervailing Duty Administrative Review, 57 Fed. Reg. 26,646 (Dep't Commerce June 15, 1992)). On remand, Commerce has granted Zhongji's EVA request without protest. See Final Results of Redetermination Pursuant to Court Order, ECF No. 50-1 at 8 (Jan. 1, 2020) ("Remand Results"). Commerce concedes that "since [it] made an adjustment to all of Zhongji's export sales in the Preliminary Determination, it is not clear why Zhongji's failure to identify its U.S. sales is grounds for denying the adjustment." Id. at 6. Commerce suggests that there may have been a miscommunication between the parties between the preliminary and final determinations. Id. at 8. Commerce maintains that the way it made the adjustment in the Preliminary Determination was incorrect, but it reconsidered the EVA methodology between the preliminary and final determinations. Id. at 7–8. Apparently, Commerce accepts responsibility for not adequately communicating the change to Zhongji. Id. at 8. Commerce has sufficiently complied with the court's remand order and no party challenges Commerce's decision to grant Zhongji's request for an EVA.

### b. Export Buyer's Credit Program

In Jiangsu, the court concluded that Commerce's explanations for applying AFA to find that Zhongji benefitted from the EBCP failed to satisfy Commerce's statutory investigative

requirements. Jiangsu, 405 F. Supp. 3d at 1334. The court found Commerce's application of AFA to find that Zhongji, a mandatory cooperating party that submitted uncontroverted affiliate and customer certifications of non-use, benefitted from the EBCP based on the GOC's failure to cooperate to be unsupported by substantial evidence and contrary to law, because Commerce did not explain why a complete understanding of the EBCP's operation is necessary to verify non-use of the program. Id. at 1333.

On remand, Commerce has accepted Zhongji's and its customers' claims of non-use of the EBCP as sufficient evidence that Zhongji does not benefit from the EBCP. Id. at 13–14. Commerce makes this concession "under respectful protest." Id. at 14 & n.45 (citing Viraj Grp., Ltd. v. United States, 343 F.3d 1371 (Fed. Cir. 2003)). Unlike Viraj, however, this matter does not involve a "contrary position forced upon it by the court," see 343 F.3d at 1376, although it may require procedures that would lead to such a position. Nor does this case involve a remand order "with instructions that dictate a certain outcome that is contrary to how Commerce would otherwise find." Meridian Prods., LLC v. United States, 890 F.3d 1272, 1276 n.3 (Fed. Cir. 2018).

As this court has repeatedly explained, where Commerce applies AFA to determine that a cooperating party benefits from the use of the EBCP solely on the basis of the GOC's failure to provide the requested information pursuant to 19 U.S.C. §§ 1677e(a)(2)(B) or 1677e(b), as it did here, Commerce must (1) identify the gap in the record, (2) establish how the withheld information creates the gap (e.g., by explaining why the withheld information is necessary to verify the cooperating party's claims of non-use), and (3) demonstrate that only the withheld information can fill the gap by explaining why the record evidence, or other information accessible by respondents, is insufficient or impossible to verify. See Jiangsu, 405 F. Supp. 3d at 1333 (collecting cases). The court, therefore, ordered Commerce to "consider what information could be verified that

would show non-use." Id. at 1334. The court also ordered all parties "to contemplate a solution to the impasse and to confer." Id.

Commerce insists that it still does not know what information "it should look for in attempting to determine whether a loan is traceable to the China Ex-Im Bank" for purposes of ascertaining Zhongji's claimed non-use of the EBCP. Remand Results, at 13. Commerce acknowledges that, during remand, Zhongji "proposed three questions that Commerce could ask the GOC to find a path forward to verification," and that Zhongji additionally suggested five questions "that Commerce should issue to Zhongji's customers relating to the customer's loans and lenders," the answers to which Commerce could verify.[1,2] Id. at 9–10. Notwithstanding Zhongji's apparent good-faith efforts to comply with the court's remand order, Commerce maintains that none of Zhongji's proposed questions remedies "Commerce's concerns regarding its inability to verify statements of non-use by Zhongji and its customers." Id. at 10. In Commerce's view, "verification under the circumstances" of this case would be unproductive, and it is wholly at a loss absent the GOC's cooperation. Id. at 13. The court's order, however, was not for Commerce to verify Zhongji's non-use of the EBCP, but rather for Commerce to "explain why a complete understanding of the operation of the program is necessary to verify non-use of the program" and for all parties to attempt to identify an alternative verification procedure.

---

[1] Presumably, if the customers did not cooperate, Commerce would have the lack of data allowing it to proceed to fill in the blanks with data of its choosing. See 19 U.S.C. §§ 1677e(a)–(b). Commerce did not comment on the efficacy of the specific questions that Zhongji proposed that Commerce ask its customers.

[2] The court accepts that Commerce is not required to send new questions to the GOC, as Commerce has reasonably determined that it has not shown full cooperation, having unilaterally decided that some of Commerce's questions were irrelevant. See Decision Mem. for the Final Determination in the Countervailing Duty Investigation of Certain Aluminum Foil from the People's Republic of China, C-570-054, POR 1/1/2016-12/31/2016 at 29–31 (Dep't Commerce Feb. 26, 2018) ("I&D Memo").

Jiangsu, 405 F. Supp. 3d at 1333. Part of Commerce's task on remand was to collaborate and confer with Zhongji to ascertain relevant queries, id. at 1334, in aid of identifying what information, if any, is either "not available on the record," being withheld, or not verifiable. 19 U.S.C. § 1677e(a). Apparently, it has not attempted to do so.

At best, Commerce's current position is that because Zhongji's customer declarations "do not cover all of its U.S. sales," the record is incomplete,[3] so that "Zhongji's claimed non-use of the EBCP" is necessarily unverifiable. Remand Results, at 13. But customer declarations are not the present issue. Zhongji's questions go well beyond such declarations. Apparently, Commerce's true position is that it wishes to rely solely on GOC's failures. It recognized that the court does not accept that position and, thus, has in various cases lately interposed non-verifiability or incompleteness as reasons to maintain the EBCP as contributing to the CVD rates, without much to back up such stances. Nevertheless, Commerce has now lowered Zhongji's positive CVD cash deposit rate by 10.54 percentage points by eliminating the EBCP subsidy portion of the CVD rate. See Remand Results, at 14.

Commerce has chosen not to continue this matter by giving respondent a fair opportunity to prove its case under Commerce's new view of the program, but rather has simply granted the relief sought as if compelled to do so by the court. As indicated, the court did not direct this result; Commerce chose it. The respondent party has filed no comments and apparently has concluded that this is the most expedient way to finally obtain relief. The domestic parties have also remained

---

[3] The declarations cover close to all of Zhongji's U.S. sales. See Mem. of P. & A. in Supp. of Rule 56.2 Mot. for J. on the Agency R. by Pls. Jiangsu Zhongji Lamination Materials Co., Ltd. et al., ECF No. 27 at 18 (Dec. 19, 2018) (citing Section III of Zhongji's Questionnaire Responses, vol. I § III, Ex. 12, C.R. 58, 64 (June 12, 2017)). The high percentage of response could constitute substantial evidence.

silent. At this point, the court sees no purpose in forcing further action upon parties that do not desire it.

## CONCLUSION

For the foregoing reasons, Commerce's Remand Results are SUSTAINED. Judgment will issue accordingly.

/s/Jane A. Restani<br>Jane A. Restani, Judge

Dated: March 24, 2020
       New York, New York